UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS


CIVIL ACTION NO. 1-11-CV-10987-NMG


IN RE:

DAVID GEORGE AKILLIAN
DEBTOR

_____


MICHAEL HAIG AKILLIAN
APPELLANT


v.


JOSEPH BRAUNSTEIN, CHAPTER 7 TRUSTEE
OF THE ESTATE OF DAVID GEORGE AKILLIAN
APPELLEE


APPELLATE BRIEF OF JOSEPH BRAUNSTEIN,
CHAPTER 7 TRUSTEE


Steffani Jill Boudreau
BBO# 564967
Riemer & Braunstein LLP
Three Center Plaza
Boston, MA  02108
(617) 523-9000
sboudreau@riemerlaw.com


July 19, 2011

## TABLE OF CONTENTS

I.     STATEMENT OF ISSUES ON APPEAL ........................................................................ 1

II.    STANDARD OF REVIEW ......................................................................................... 2

III.   STATEMENT OF THE CASE..................................................................................... 2

IV.   STATEMENT OF FACTS ......................................................................................... 4

    A.    Appellant's Statement of Facts .................................................................. 4

    B.    Issues with Michael's Fact Statement ...................................................... 7

V.    ARGUMENT ............................................................................................................ 7

    A.    As a Matter of Law, Rights of Tenants in Common Cannot Be Altered Without A Writing ...................................................................................... 7

    B.    The Trustee Stands in the Shoes of the Debtor........................................ 9

    C.    The Appellant's Estoppel Argument, Raised For The First Time On Appeal, Has Been Waived Under The "Waive-Or-Raise" Rule ......................................... 10

    D.    Michael's Inconsistent Positions Advanced ......................................... 11

    E.    As a Matter of Law, the Alleged Oral Agreement Cannot Alter the Trust........... 12

        1.    There is No Evidence of an Oral Agreement........................... 12

        2.    Extrinsic Evidence is Inadmissible to Alter the Trust ............ 13

        3.    The Trust Requires Any Modification to be in Writing .......... 14

        4.    Oral Agreements Pertaining to Hereditaments and Interests in Land are Barred by the Statute of Frauds........................................... 15

    F.    Michael's "Proceeds" Argument, Raised for the Time on Appeal Lacks Merit in any Event ................................................................................. 16

    G.    The Chapter 7 Trustee Established his Prima Facie Case That the Transfer was Avoidable as a Preference Pursuant to 11 U.S.C. § 547................................ 18

VI.   CONCLUSION....................................................................................................... 20

## Cases

Altobelli v. Montesi, 300 Mass. 396 (1938) ................................................................... 9

Anderson v. Bessemer City, 470 U.S. 564 (1995)........................................................... 2

Burke v. Dolan, 1993 Mass. Super. LEXIS 95 (Mass. Super. Ct. Nov. 23, 1993)................. 13, 14

Commonwealth v. Source One Assocs., 436 Mass. 1184 (2002)...................................... 2

Dewey v. State Tax Commission, 346 Mass. 43 (1963)............................................... 14

Grenier v. Cyanamid Plastics, Inc., 70 F.3d 667 (1st Cir. 1995) ................................................... 17

Higgins v. New Balance Athletic Shoe, 194 F.3d 252 (1st Cir. 1999) ........................................... 10

In re Duda, 422 B.R. 339 (2010) ................................................................................................. 8

In re LaRoche, 969 F.2d 1299 (1st Cir. 1992) ............................................................................. 2

Kipperman v. Dixson (In re Diego's, Inc.) 88 F.3d 775 (9th Cir. 1996) ..................................... 11

Kirschbaum v. Wennett, 60 Mass. App. Ct. 807 (2004) ......................................................... 14, 15

Leahy v. Old Colony Trust Co., 326 Mass 49 (1950) ................................................................. 14

McCoy v. MIT, 950 F.2d 13 (1st Cir. 1991) ............................................................................... 10

Muniz-Cabrero v. Ruiz, 23 F.3d 607 (1st Cir. 1994) ................................................................. 10

Murphy v. Robinson (In re Ipswich Bituminous Concrete Products, Inc.), 82 B.R. 661 (D.
    Mass. 1988) ........................................................................................................................ 9

Reum v. Brazeau, 1 Mass. App. Ct. 549 (1973) .................................................................... 17, 18

Riley v. Johnson, 2008 Bankr. LEXIS 3962 (B.A.P. 1st Cir. 2008) ........................................... 9

Sammartano v. Palmas del Mar Props., Inc., 161 F.3d 96 (1st Cir. 1998) ................................. 17

Sokol v. Nathanson, 317 Mass. 325 (1944) ............................................................................... 17

Town of Belmont v. Massachusetts Amusement Corp., 333 Mass. 565 (1956) ........................... 8

United States v. Slade, 980 F.2d 27 (1st Cir. 1992) ............................................................... 10, 11

Voner v. Bellingham (In re Latini), 334 B.R. 338 (Bankr. D. Mass. 2005) ................................. 18

Ward v. Grant, 9 Mass. App. Ct. 364 (1980) ............................................................................. 9

Wessinger v. Spivey (In re Galbreath), 286 B.R. 185 (Bankr. S.D. Ga. 2002) ........................... 9

## Statutes

11 U.S.C. § 547 ................................................................................................... 1, 3, 4, 18

11 U.S.C. § 548 ............................................................................................. 1, 2, 3, 4, 8, 9, 18

11 U.S.C. § 558 ................................................................................................................. 9

11 U.S.C. §544(a)(3) ........................................................................................................ 8

M.G.L. c. 183 §4 ........................................................................................................ 8

M.G.L. c. 259 § 1 ................................................................................................ 4, 8, 15

M.G.L. c. 259 § 5A .................................................................................................... 4

### Other Authorities

*Collier on Bankruptcy* § 558, Defenses of the Estate .................................................... 9

H.J. ALPERIN & L.D. SHUBOW, SUMMARY OF BASIC LAW §17.12 (3d ed. 1996) ........................... 9

*Restatement 2d Trusts*, 38 Comment ........................................................................ 13

## I.     STATEMENT OF ISSUES ON APPEAL

By virtue of his Appeal, the Appellant, Michael Akillian ("Michael") concedes that the transfer determined by the Bankruptcy Court to be fraudulent (the "Transfer") (i) was made within the applicable reachback period, (ii) was of property of the Debtor, (iii) that the Debtor was insolvent or rendered insolvent as a result, and (iv) that reasonably equivalent value was not exchanged therefore. The sole contention of Michael, therefore, is that an oral agreement between he, his brother (the Debtor), and their mother (now deceased) transforms the avoidable gift, without consideration, into an unavoidable transfer. The Appellee and Chapter 7 Trustee for the Debtor, Joseph Braunstein (the "Trustee"), maintains that the Bankruptcy Court's application of the Statute of Frauds to the oral agreement was proper, and that the transfer was indeed fraudulent under 11 U.S.C. § 548, or in the alternative, was an avoidable preference under 11 U.S.C. § 547. In either case, Michael does not prevail under any theory advanced in his Appeal.

Michael has tried in vain to obfuscate issues and raise a "smoke and mirrors" defense about some oral agreement made with his late mother, that the payment of the mortgage should come out of his brother's share when the Property was sold. The Court did not accept this defense for a variety of reasons. It is undisputed that the mother, as Trustee of the Trust, never amended the beneficial interests in the Trust to increase Michael's percentage. It is also undisputed that at the time of the sale, title to the Property stood in the name of Debtor and Michael as fifty (50%) percent Tenants in Common. Thus, regardless of Michael's spin, there can be no dispute that the Debtor had a legal right to 50% of the proceeds, and that the Debtor either gifted or repaid Michael for the payment of the mortgage. Thus, Michael ended up with $71,142.45 of Debtor's share of the sale proceeds. There was and is no legal theory alleged here or below that would allow Michael to retain this sum.

## II.   STANDARD OF REVIEW

The legal determinations made by the Bankruptcy Court shall be reviewed by the Court de novo, and any factual findings made by the Bankruptcy Court shall be upheld unless this court finds them to be clearly erroneous.  In re LaRoche, 969 F.2d 1299, 1301 (1st Cir. 1992).  In other words, this Court may disrupt a trial court's findings only if, after a review of the entire evidence, this Court is "left with a definite and firm conviction that a mistake has been committed."  Anderson v. Bessemer City, 470 U.S. 564, 573 (1995).  If the trial court's account of the evidence is plausible in light of the record reviewed in its entirety, a reviewing court may not reverse even if convinced that it would have weighed the evidence differently as a trier of fact.  Anderson, 470 U.S. at 574.  The burden for establishing that such an error of law has been committed falls upon the appellant.  Commonwealth v. Source One Assocs., 436 Mass. 118, 124 (2002).  Since Michael has not carried his burden in this appeal, the Bankruptcy Court's findings and order should be affirmed in all respects.

## III.   STATEMENT OF THE CASE

At Summary Judgment, the Trustee argued that the alleged oral and undocumented agreement between Michael, the Debtor and their mother, allegedly relating to the distribution of trust assets, violated the Statute of Frauds and was unenforceable, and thus that the distribution of proceeds following the sale was a fraudulent transfer.  Establishing each element of 11 U.S.C. § 548, the Trustee maintained that the Declaration of the Ceil and Red Realty Trust (the "Trust") governed the distribution of trust assets, and that said document could not be modified by an oral agreement allegedly made between the Debtor, Michael, and their deceased mother.  In his Supplemental Memorandum, the Trustee maintained that whether or not the Trust document governed the distribution of proceeds, Michael and the Debtor (neither of whom were trustees of the Trust) could not orally agree that the Debtor owned something other than 50% of the

2

Property once it was placed (by Land Court Order) into a tenancy in common, and that the distribution of the proceeds in unequal amounts to satisfy a purported self-serving oral arrangement was avoidable under 11 U.S.C. § 548.  The Trustee also argued that if, as Michael alleged, there was an obligation on the part of the Debtor to re-pay Michael on an advance (under the Trust or otherwise), that said obligation was an antecedent debt, and the Transfer would in any event be avoidable as a preference as Michael essentially argued that the Debtor owed this money to Michael as a creditor.

In contrast, Michael took the position that as "a matter of equity" Michael should be entitled to retain proceeds which, by law, were clearly the Debtor's property.  As to the Trustee's 11 U.S.C. § 547 claim, Michael conceded all facts and disputed only the issue of whether he was a creditor of the Debtor since, he stated, "Michael's share of the proceeds was never property of the Debtor."  Both parties conceded, and the Court agreed, that whether Michael was a creditor of the Debtor was a conclusion of law for the Court to decide, and the averments in the Affidavit of Michael and the Debtor concerning "creditor" status were accordingly stricken.

The Bankruptcy Court considered the Transfer under 11 U.S.C. §548, analyzed what the Debtor's interest in the Property was, and determined that the interest was fraudulently (though constructively so) transferred.  Applying the elements of 11 U.S.C. § 548, the Court concluded that (i) the Trust had terminated by its terms upon the death of the last of the trustees (the mother); (ii) following the termination of the Trust, the brothers took title to the Property as Tenants in Common; (iii) that each brother thus received an undivided one-half interest in the Property as Tenants in Common by operation of law; and (iv) that the Debtor had a property interest in one-half of the net cash proceeds from the sale of the Property as a co-tenant.  Stated another way, the Court held that "because the Trust had terminated, the intention of [the trustees]

3

that the Debtor and Michael "share and share alike" was replaced by their rights and obligations to each other as tenants in common. . . which did not include an obligation on the part of the Debtor, moral or otherwise, to compensate Michael for his mother's decision to mortgage the Property and convey the mortgage proceeds to the Debtor . . ." Thus, when a portion of the Debtor's share of the net sale proceeds was delivered to Michael, the Debtor made a gift to Michael, which gift was void for want of consideration and recoverable under 11 U.S.C. § 548. The Court then considered the alleged oral agreement which Michael maintained (in essence) superseded the Trust document and the rights of Tenants in Common, and held that even had the Transfer been made pursuant to such a purported oral agreement between the mother (now deceased), the Debtor and Michael to "true-up" with regard to the mortgage proceeds, such an agreement, "if made, would not be enforceable against the Trustee" under M.G.L. c. 259 § 1 or M.G.L. c. 259 § 5A.  The Court concluded that whether the distribution of the proceeds related back to an agreement concerning the distribution of an inheritance, or to an agreement concerning the sale of the Property, the Statute of Frauds prevented the enforcement of such an agreement, and deprived Michael of his purported defense.  As for the Trustee's preference claim, the Court found (in the alternative) that the Transfer would in any event be avoidable under 11 U.S.C. § 547, *assuming that* Michael held an antecedent debt.

## IV.     STATEMENT OF FACTS

### A.     Appellant's Statement of Facts

The Trustee incorporates the following Statement of Facts, largely extracted from his Summary Judgment Memorandum,[1] which were not disputed by Michael below.

---

[1] The Appellant did not file an Appendix nor does his Brief cite to any portion of the record below.  The Trustee's references therefore refer to the documents filed on May 20, 2011 (Appellant's) and May 23, 2011 (Appellee's), as Exhibits to the parties' respective designations of the record on appeal.

1.     The Debtor and Michael, brothers, were the beneficiaries of a realty trust known as the Ceil and Red Realty Trust, u/d/t April 8, 1983 (the "Trust"), recorded at the Middlesex South District Land Court as Document 637548.  See Docket No. 113 (Affidavit of Steffani Jill Boudreau Authenticating Documents), (hereinafter "Counsel Aff.", Exh. ____ "), and Exhibit A thereto.

2.     Celia and George Akillian, the parents of the Debtor and Akillian, were the named trustees of the Trust.  Counsel Aff., Ex. A.

3.     The Trust was the record owner of certain real property situated at 1-3 Howe Street, Watertown, Massachusetts (the "Property").

4.     The Trust provided, *inter alia*, that:

> The income of the Trust, or the use of the Trust property, or such part thereof as the Trustees may deem advisable and such part or parts of the principal of the Trust as the Trustees may deem advisable shall from time to time at such intervals as the Trustees may deem advisable be paid or used and expended for the support, maintenance, or other needs of the Donors' children, MICHAEL HAIG AKILLIAN, of Bedford, Massachusetts and DAVID GEORGE AKILLIAN, of Arlington, said Massachusetts, the beneficiaries hereof, in such amounts as the Trustees shall deem proper and advisable.

Counsel Aff., Ex. A, ¶8.

5.     Under the terms of the Trust, the Trustees reserved for themselves "the power to amend, alter or revoke this Trust instrument in any and every particular, by recording such amendment, alteration or revocation in the Middlesex Registry."  Counsel Aff., Ex. A, p. 1.

6.     The Trust also included a spendthrift provision which provided that the beneficiaries could not "anticipate, assign, transfer, alienate or in any way pledge or hypothecate his or her respective interest" in the Trust.  Counsel Aff., Ex. A, ¶11.

7.      George Akillian died on August 28, 1991, leaving Celia Akillian as the sole trustee of the Trust.  See Docket No. 12 (Memorandum of Law of Plaintiff in Support of Motion for Summary Judgment (hereinafter, "Plaintiff's Memo of Law"), ¶7; See also, Counsel Aff. Ex. B.

8.      Celia Akillian, the remaining Trustee of the Trust, died on March 4, 2006. Counsel Aff., Ex. B.

9.      The Trust provided, *inter alia*, that upon the death of the last trustee, all assets of the Trust would be transferred to the beneficiaries in "equal shares, share and share alike." Counsel Aff., Ex. A.

10.     On March 4, 2006, the beneficiaries of the Trust were the Debtor and Michael. Therefore, title passed as Tenants in Common on that date.  Plaintiff's Memo of Law, ¶10.

11.     On July 24, 2008, the Land Court ordered the entry of a new Certificate of Title for the Property confirming title in the names of the Debtor and Michael.  Counsel Aff. Ex. B.

12.     On August 1, 2008, the Debtor and Michael, as Tenants in Common, sold the Property for the stated consideration of $505,500.00.  Counsel Aff. Ex. C.

13.     The net proceeds from the sale of the Property to be divided between the Tenants in Common totaled $330,996.43.

14.     As Tenants in Common, the net proceeds from the sale belonged to the Debtor and Michael, or $165,498.21 each.  Plaintiff's Memo of Law, ¶14.

15.     Michael took $236,640.67 from the sale proceeds, whereas the Debtor received only $94,355.76.  Plaintiff's Memo of Law, ¶16.

16.     Michael received $71,142.45 of proceeds (the "Transfer") which belonged to or should have been paid to the Debtor as a Tenant in Common.

**B.**     **Issues with Michael's Fact Statement**

At least two items in Michael's Fact Statement warrant comment.  First, Michael refers to the Trust as a Nominee Trust, which it is not.  Rather, the Trust is a revocable trust, in which the Trustees retained complete and unfettered discretion to alter, amend and terminate, and over which assets they maintained complete and unfettered control.  Counsel Aff., Ex. A.  In addition, Paragraph 11 in Michael's Brief mischaracterizes the Court's findings, as this statement was not relied upon or held as an undisputed fact by the Bankruptcy Court.  Paragraph #11 reads:

> There was an oral agreement between Mrs. Akillian, the Debtor and Michael as follows: "we also agreed that when the time came to sell the house, that [the debtor] would already have withdrawn that amount of money so whatever it was it would come from his share of the sale of the house."

While Michael refers to this quote as a "finding," the Court was simply quoting from Michael's deposition testimony as it related to the alleged oral agreement and indicated that such agreement (to the extent it existed) had *not* been reduced to writing.  See, Memorandum of Court dated April 13, 2011 ("Court Memo").  The Court held that "[t]here was no evidence of a written agreement among the Debtor, Michael and their mother about a  true-up . . . an agreement which [in any event] contravened an express term of the Trust  . . . [and] [b]ecause any verbal agreement to alter the terms of the Trust or affect the distribution of the proceeds from the sale of the Property would be subject to the Statute of Frauds, this Court finds that such an agreement, *if made*, would not be enforceable against the Trustee." Id.

## V.     ARGUMENT

**A.**     **As a Matter of Law, Rights of Tenants in Common Cannot Be Altered Without A Writing**

At the time of the Transfer, Michael and the Debtor held the Property as Tenants in Common, and as such were each liable as Tenants in Common to satisfy the mortgage on the Property.  While a Tenant in Common may convey his interest in land or a portion thereof, such

conveyance must be done in writing to defeat the Statute of Frauds which provides that the conveyance of an interest in land must be memorialized in writing. M.G.L. c. 259 § 1. Even an "equitable interest in land ... must be created as the result of some conveyance, contract, fraud, or other circumstance recognized by law as creating such an interest." Town of Belmont v. Massachusetts Amusement Corp., 333 Mass. 565, 570 (1956). To be effective against a creditor (here, the Trustee) in Massachusetts (a race-notice state) a conveyance must not only be in writing, but must also be recorded at the appropriate registry of deeds. M.G.L. c. 183 §4; In re Duda, 422 B.R. 339 (2010) (Chapter 7 Trustee deemed to be without notice of unrecorded interest and his rights superseded rights of claimant's Trustee pursuant to § 544(a)(3)). Here, there was nothing recorded at the registry to indicate anything other than a Tenancy in Common existed between Michael and the Debtor, each holding an undivided 50% interest in the Property as a matter of law. There was nothing on record to evidence that Michael had a larger percentage interest in the tenancy than 50%, nor was there a writing produced relating to an alleged future promise by the Debtor concerning his future interest in the Property, alleged to have been made at a time when the Trust still owned the Property, which was neither memorialized nor recorded. Indeed, such an agreement would be prevented by the Spendthrift provision of the Trust, and thus completely ineffective to convey the Debtor/beneficiary's future interest in the Property. Counsel Aff., Ex. A. There can be no dispute that at the time of the sale, the Debtor and Michael each held an undivided one-half interest in the Property and in the net proceeds thereof.

Since the Bankruptcy Code does not define what constitutes an interest in property, whether a debtor has a property interest under 11 U.S.C. § 548 is a question to be determined by state law. Murphy v. Robinson (In re Ipswich Bituminous Concrete Products, Inc.), 82 B.R. 661,

666 (D. Mass. 1988).  Under Massachusetts law, a tenant in common possesses an undivided one

half interest in property, which interest is alienable, and may be transferred without the consent

of the co-tenants by deed, lease, mortgage, will or intestate succession.  H.J. ALPERIN & L.D.

SHUBOW, SUMMARY OF BASIC LAW §17.12 at 610 (3d ed. 1996).  See also, Altobelli v. Montesi,

300 Mass. 396 (1938).  Accordingly, for the purposes of 11 U.S.C. § 548, the "interest" of the

Debtor as a tenant in common was an undivided one-half interest in the Property, or fifty (50%)

percent of its value.  See generally, Riley v. Johnson, 2008 Bankr. LEXIS 3962 (B.A.P. 1st Cir.

2008).[2]

**B.      The Trustee Stands in the Shoes of the Debtor.**

Michael suggests that the Trustee lacks standing to contest the validity of the oral

argument on the basis of the Statute of Frauds, and cites Ward v. Grant for the proposition that

because the Debtor was the "party to be charged" with the terms of the alleged oral agreement,

the agreement cannot be found to violate the statute because the Debtor does "not dispute the

obligation."  Michael is mistaken.  Pursuant to 11 U.S.C. § 558, the bankruptcy estate has the

benefit of any defense available to the debtor against any entity, including the Statute of Frauds.

See 11 U.S.C. § 558; 5 *Collier on Bankruptcy* § 558, Defenses of the Estate.  Accordingly, a

bankruptcy trustee may invoke the Statute of Frauds as a defense to the enforceability of an

alleged pre-existing oral agreement.  See Wessinger v. Spivey (In re Galbreath), 286 B.R. 185,

200 (Bankr. S.D. Ga. 2002) (trustee in adversary to recover a fraudulent transfer successfully

invoked Statute of Frauds to enforceability of alleged pre-existing oral agreement).  The Ward v.

Grant, 9 Mass. App. Ct. 364 (1980), case is factually distinguishable as in Ward, a creditor, not

the trustee, sought and invoked the Statute of Frauds.

---

[2] Of course, this assumes only two Tenants in Common.  If, for example, there were four, each would own an undivided 25% interest.  If one sold his interest to another tenant and it was duly recorded, that Tenant would hold 50% and the other two 25% each.

**C.     The Appellant's Estoppel Argument, Raised For The First Time On Appeal, Has Been Waived Under The "Waive-Or-Raise" Rule**

In his Brief, Michael asserts that the grant of summary judgment was, in essence, premature as, he posits, the lower court "could have found" that the agreement was valid on the basis of estoppel.  Whether estoppel would here work as an exception to the writing requirement of the Statute of Frauds is not properly before this Court as Michael failed to articulate this argument at any time below.  United States v. Slade, 980 F.2d 27, 31 (1st Cir. 1992) ("[T]he raise-or-waive rule applies with full force when an appellant tries to present a new theory about why facts previously placed on record are determinative.").  Moreover, the District Court is free to disregard arguments that are not adequately developed, (see McCoy v. MIT, 950 F.2d 13, 22 (1st Cir. 1991)), and such arguments cannot be resurrected on appeal.  Indeed, in his Opposition Memorandum below, Michael conclusively decided, without support, that "[t]his is not a Statute of Frauds issue and this is not an issue that an alleged oral agreement is unenforceable."  In his Supplemental Memorandum filed, Michael again offhandedly dismissed the application of the Statute of Frauds to this case, stating "[s]ince the issue in this case involved the division of proceeds rather than the sale of real estate, there is no requirement in the Statute of Frauds that any such agreement for division of proceeds be in writing."  As the estoppel argument was not advanced below, this Court "need not probe this point too deeply … for -- absent exceptional circumstances, not present here -- we consider on appeal only arguments that were before the nisi prius court." Higgins v. New Balance Athletic Shoe, 194 F.3d 252, 259 (1st Cir. 1999).  See also, Muniz-Cabrero v. Ruiz, 23 F.3d 607, 609 (1st Cir. 1994) ("A party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered. If [he] does not do so, and loses the motion, [he] cannot raise such reasons on appeal" (citations and internal quotation marks omitted)); see also Slade, 980

F.2d at 30 ("It is a bedrock rule that when a party has not presented an argument to the district court, she may not unveil it in the court of appeals."). Michael's novel theory of estoppel was not raised below and cannot be considered on appeal.

Even assuming that the estoppel argument had been advanced below, there was no evidence before the Court on which an estoppel argument could have been premised. Michael's argument that he "changed his position based on his reasonable reliance" is not supported by (nor even referenced in) the record. Even if Michael could establish that reliance on the Debtor's so called "promise" was reasonable, to succeed on his estoppel argument the evidence would need to have reflected that Michael "seriously changed his position" to his detriment in reliance on the alleged oral agreement and suffered "unconscionable injury" as a result. Kipperman v. Dixson (In re Diego's Inc.) 88 F.3d 775, 778 (9th Cir. 1996). The record clearly does not support such a finding and there are no grounds to reverse the Bankruptcy Court's ruling on the basis of estoppel.

### D.    Michael's Inconsistent Positions Advanced

As noted below, Michael's statement in his Opposition to the Trustee's Motion for Summary Judgment that he "was never part of any oral agreement relative to the mortgage of this property" contradicted his deposition testimony when he testified that he, the Debtor and his mother entered into an oral agreement concerning the mortgage on the Property. Docket 129 (Transcript of Hearing on Summary Judgment and Motion to Strike) (hereinafter "Transcript"), pp. 15-22. Similarly, Michael testified under oath in his Answers to Interrogatories that "[t]he Debtor agreed that the mortgage that he placed on the Property would be paid from his share of the gross sale proceeds." Counsel Aff., Ex. H (Answer to Interrogatory 7). Again, even if this promise were made, the Debtor would be seeking to assign a portion of his beneficial interest in the Trust which he could not because of the Spendthrift clause, and because his future interest

11

was unassignable.  Michael's position appears to have shifted as he now maintains that yes, there

was an oral agreement, but that the agreement related only to the division of Trust proceeds and

not to the mortgage or the distribution of the Trust assets.  But, of course, the proceeds were

Trust assets, yet in another form.  These inconsistent positions raise questions as to the veracity

of the story told, heightened by the unavailability of their mother to testify at cross examination.

**E.      As a Matter of Law, the Alleged Oral Agreement Cannot Alter the Trust**

    1.      There is No Evidence of an Oral Agreement[3]

Michael testified at his deposition that he was not aware of any agreement until a

conversation where his brother, the Debtor, mentioned the Mortgage on the Property.  See

Counsel Aff. at Exhibit J (Akillian Depo. at pp. 14-20).  Michael allegedly questioned his mother

and she reluctantly admitted to taking out the Mortgage.  Id.  Michael stated, "so they kind of

shared it in the phone conversation and it was in that phone conversation that we said, okay, he's

taking his portion of this house early.  It's going to come from his share, you know, when and if

we sell the house, and they both said absolutely."  Id. at 18.  However, Michael has failed to

provide any documents evidencing any alleged agreement.[4]  Moreover, the Affidavits submitted

at Summary Judgment below are silent as to the existence of any oral agreement.  In the Debtor's

Affidavit, he simply states what his belief was as far as the repayment of the mortgage and

payment to his brother, but does not mention any agreement, made either with the mother or

Michael, or made concerning the Property, the distribution of the Trust res, or the split of the

proceeds.  As Michael cannot provide any admissible evidence that an oral agreement was

---

[3] The Affidavits submitted below on Michael's behalf (by the Appellant and the Debtor, respectively) are silent as to whether such an oral agreement was made.

[4] Indeed, if such an agreement were made, Michael would have been a third-party beneficiary without the right to seek to enforce same.

entered into, the Transfer cannot be considered an advancement of the Debtor's interest in the Trust pursuant to such alleged agreement.

2.     <u>Extrinsic Evidence is Inadmissible to Alter the Trust</u>

Even assuming there was an oral agreement, it would be unenforceable against the Trustee because its terms (if any) are contrary to the terms of the Trust.  When a trust is created by an inter vivos transaction and evidenced by a written instrument, the terms of the trust are determined by the provisions of the instrument and interpreted in light of all the circumstances. Other evidence including the intention of the settlor is not admissible.  <u>See</u> *Restatement 2d Trusts*, § 4, Terms of the Trust.  Under the parole evidence rule, "where the manifestation of intention of the settlor is integrated in a writing . . . , extrinsic evidence, in the absence of fraud, duress, mistake, or other grounds for reformation or recision, is not admissible to contradict or vary it." <u>Burke v. Dolan</u>, 1993 Mass. Super. LEXIS 95 (Mass. Super. Ct. Nov. 23, 1993); <u>citing</u> *Restatement 2d Trusts*, 38 Comment.  The Trust is a fully integrated document which specifically states:

> All acts done, and all deeds, drafts, notes or checks or other instruments executed by the Trustees in behalf of the Trust shall be conclusive evidence of authority to do and execute same and shall be binding upon Trust, and all conveyances shall transfer a full and complete title discharged of Trusts, unless therein otherwise stipulated.

<u>See</u> <u>Counsel Aff., Exhibit A, ¶6</u>.  In this case, Celia Akillian did not make any written modifications to the Trust.  Even if the funds from the Mortgage were used for Debtor's benefit, which the Chapter 7 Trustee does not concede, Mrs. Akillian would have merely been acting in accordance with the language of the Trust which specifically allowed for the use of Trust property for the maintenance and support of the Trust beneficiaries. <u>See</u> <u>Counsel Aff., Exhibit A, ¶ 8</u>.  As noted, the Trust includes a Spendthrift provision and provides that the beneficiaries of

13

the Trust do <u>not</u> have the power to "anticipate, assign, transfer, alienate or in any way pledge or hypothecate his or her respective interest in this Trust, or any part thereof, and any attempt to do so shall be of no effect." <u>See</u> <u>Counsel Aff., Exhibit A at ¶ 11</u>.  Moreover, Paragraph 10 specifically provides for equal distribution of the Trust property at the death of the last trustee. <u>See</u> <u>Counsel Aff., Exhibit A at ¶ 10</u>.  As the provisions of the Trust determine its terms as a matter of law, any allegations of an oral agreement to the contrary may not be introduced to contradict its written provisions.  <u>See</u> <u>Counsel Aff., Exhibit A at ¶ 10</u>; <u>Burke</u>, 1993 Mass. Super. LEXIS 95.

     3.     <u>The Trust Requires Any Modification to be in Writing</u>

A valid trust cannot be revoked or altered except by the reserved power to do so, which must be exercised in strict conformity to its terms.  <u>Leahy v. Old Colony Trust Co.</u>, 326 Mass. 49 (1950) (a trust cannot be altered or revoked by settlor except in accordance with power to do so reserved in trust instrument); <u>Dewey v. State Tax Com.</u>, 346 Mass. 43 (1963) (oral agreement did not modify a trust where the Trust provided that all amendments must be written).  Where a trust instrument explicitly provides for a power and method of modification, that power must be exercised in strict conformity with its terms.  <u>Kirschbaum v. Wennett</u>, 60 Mass. App. Ct. 807 (2004).  In this case, the Trust provides the exclusive specific manner in which the Trust may be amended.  The Trust provides that an amendment must be recorded in the Middlesex County South District Registry of Deeds, Cambridge, Massachusetts.  <u>See</u> <u>Counsel Aff., Exhibit A</u>,  p. 1. While Celia Akillian had the power to modify the Trust pursuant to its specific provisions, no such amendment or alteration was filed with the Registry of Deeds.  Because the Trust does not allow the Trust to be orally amended, any attempt to make such a modification is invalid. Accordingly, the argument that the oral agreement modified the Trust must fail as a matter of law.

14

Even had there been an oral agreement, said agreement would have been with the mother, who is now deceased and against whom an agreement cannot be enforced.  Indeed, as the Trust was revocable, the mother as trustee had the power at any time to dissolve or amend the Trust at will, and an agreement concerning distributions, if any, would be rendered void.

4.   Oral Agreements Pertaining to Hereditaments and Interests in Land are Barred by the Statute of Frauds

M.G.L. c. 259, § 1, the Massachusetts Statute of Frauds, provides that all agreements involving the "sale of lands, tenements or hereditaments or of any interest in or concerning them" must be signed and in writing.  A hereditament is defined by Black's Law Dictionary as "any property that can be inherited; anything that passes by intestacy."  In <u>Kirschbaum v. Wennett</u>, 60 Mass. App. Ct. 807 (2004), the Court held that an alleged oral agreement regarding an interest in a trust violated the Statute of Frauds.

Here, the alleged oral agreement between the brothers and their mother concerned the distribution of Trust property to the beneficiaries of the Trust upon the death of the last trustee.  Accordingly, the agreement impacting the Debtor's interest in a hereditament violated the Statute of Frauds and Statute of Wills was unenforceable.  As is evident from his Answers to Interrogatories, his deposition testimony, and from argument below, the oral agreement on which the parties relied when the proceeds from the sale were "divvied up" related to the Debtor's inheritance.  Excerpts from the argument on Summary Judgment (Docket No. 129) below include the following:

> Everybody understood that ... David, with the assistance of his mother, by the real estate mortgages, got an advance on the inheritance, and when it was time to divvy up the sale proceeds that the mortgage that was on the property created by David – with his mother's assistance borrowing -- should be paid on to David's – the debtor's portion; ... (Page 13, Lines 9-14).

David got an advance on his inheritance, not an uncommon scenario; and when it came time to settle up that inheritance David's advance was taken out to pay off the Watertown Savings Bank." (Page 13, Lines 23-25).

It's very simply an understanding between the brothers as to what was going to happen with their inheritance on the real estate (Page 14, Lines 22-24).

Michael's argument on appeal that the agreement did not pertain to the distribution of the Trust res is contrary to the argument/position advanced below, and is not supported (indeed is contradicted) by the record.

**F.**   **Michael's "Proceeds" Argument, Raised for the Time on Appeal Lacks Merit in any Event**

Michael argues, though impermissibly as it was not argued below, that the Statute of Frauds does not apply because the Debtor's alleged promise to repay the Trust for the mortgage out of his share of the proceeds was not an agreement regarding his "interest in land" but rather an agreement regarding the "division of proceeds." In other words, Michael suggests that the otherwise nebulous agreement was not an agreement concerning the brothers' inheritance, nor an agreement concerning the sale of the Property, or even a distribution of a beneficial interest, but was simply an agreement concerning the distribution of proceeds from the sale of the Property, and the Statute of Frauds therefore does not apply. This argument is completely without support in the record. Indeed, there is no evidence that there was any *other* agreement made between the brothers, no reference on appeal as to when this alleged agreement was made, and neither the Affidavits filed at Summary Judgment nor the arguments advanced below support this novel argument now.[5]

While the "summary judgment standard requires this court to give the nonmovant the benefit of genuinely disputed facts and inferences, ... even this latitudinarian approach does not

---

[5] Indeed, there are further holes in this argument, for example, to whom was the promise made and who had the right to enforce the Agreement, among other undisclosed terms.

16

allow the nonmovant to switch horses in midstream." <u>Higgins v. New Balance Athletic Shoe,</u>

194 F.3d 252, 258 (1st Cir. 1999).  Consequently, a decision will not be reversed on "the basis of

arguments that were not made in the trial court." <u>Id</u>.  <u>See also</u>, <u>Sammartano v. Palmas del Mar</u>

<u>Props., Inc.</u>, 161 F.3d 96, 97-98 (1st Cir. 1998); <u>Grenier v. Cyanamid Plastics, Inc.</u>, 70 F.3d 667,

678 (1st Cir. 1995); <u>Muniz-Cabrero v. Ruiz</u>, 23 F.3d 607, 609 (1st Cir. 1994).  Indeed, where

"arguments made before the trial court and the appellate court, respectively, pull from the

evidence common factual threads but weave them into distinctly different legal patterns, the new

argument normally is deemed forfeited." <u>See</u> <u>Sammartano,</u> 161 F.3d at 97- 98.  A "party who

aspires to oppose a summary judgment motion must spell out his arguments squarely and

distinctly, or else forever hold his peace." <u>Id</u>.

Even were the Court to consider Michael's position asserted here for the first time, the

cases on which Michael relies are inapposite.  The <u>Sokol v. Nathanson</u>, 317 Mass. 325 (1944)

case relates *not* to an interest in property but to *an agreement to pay* a mortgage note on behalf of

the Debtor, which the SJC concluded was not governed by the Statute of Frauds.  In contrast, the

alleged oral agreement which Michael seeks to enforce is the agreement to sell the Property and

to divide up the proceeds between the brothers in accordance with the terms of the Trust.  <u>Sokol</u>

is not dispositive.  The <u>Reum v. Brazeau</u>, 1 Mass. App. Ct. 549 (1973) case similarly does not

here apply.  In <u>Reum</u>, a divorced wife transferred property to her husband and her husband

agreed that when the property was sold, he would split the proceeds from the sale of the property

between the two.  When the husband sold the property and failed to divide the proceeds as per

the agreement, the wife sued, and the Appeals Court held that the agreement was enforceable and

not subject to the Statute of Frauds because the agreement "concerned merely personalty."

While Michael has attempted on appeal to argue this was the case with the brothers as well, the

record is unequivocal that the oral agreement Michael seeks to enforce was the agreement

between the mother and his brother concerning the sale of land.  Thus, <u>Reum</u> is also not

applicable.

      Michael's reliance on <u>Voner v. Bellingham (In re Latini)</u>, 334 B.R. 338 (Bankr. D. Mass.

2005) is similarly misguided.  As the Bankruptcy Court below explained, <u>Latini</u> does not apply

because there, the "plaintiff was seeking a right of contribution for his predecessor's payment of

an excess share of expenses while the property was held in a tenancy in common."  In contrast,

because the purported agreement here was made while the Trust was in force and effect, the

agreement regarding repayment, made at that time, is subject to the Statute of Frauds, and was

also an attempt to convey a beneficiary's interest in trust proceeds, also barred by the terms of

the Trust.

**G.**      **The Chapter 7 Trustee Established his Prima Facie Case That the Transfer was Avoidable as a Preference Pursuant to 11 U.S.C. § 547**

      The Trustee also argued that to the extent Michael argued that the Transfer (in whole or

in part) was made in repayment of the Debtor's "indebtedness" to him based upon advances by

the Trust, said Transfer would nevertheless be recoverable by the Chapter 7 Trustee as an

avoidable preference.  Because the Court found that the oral agreement was unenforceable, the

Court held that the Transfer was fraudulent and avoidable under § 548, and followed with the

conclusion § 547 therefore did not apply.  However, the Court explained (in dicta) that all of the

other elements of the Trustee's preference claim had been established[6], and that the Transfer

would constitute a preferential transfer under 11 U.S.C. §547 assuming Michael held an

antecedent debt.  It follows, then, that had the lower Court concluded that the oral agreement was

---

[6] Indeed, it was undisputed that the Property was transferred to Akillian, an insider, within one year of the Petition Date, that the Debtor was insolvent at the time, and that Michael recovered $71,142.45 more than he would have in a Chapter 7 liquidation.

enforceable and Michael was owed money pursuant thereto, Michael would have been a creditor

of the Debtor (a legal conclusion) and the Trustee's preference claim would prevail.  Indeed,

Michael testified during his deposition that the Transfer was made to satisfy a loan that the Trust

allegedly made to the Debtor by virtue of the Mortgage, and Michael's entire theory that the

proceeds were owed to Michael under some pre-existing arrangement renders the finding that

there was an antecedent debt unavoidable.  Thus, should this Court find that there was an

obligation on the Debtor's behalf to repay Michael pursuant to the oral agreement, the Court

must find that Michael was a creditor and that the Transfer was a preferential transfer avoidable

by the Trustee in the amount of $71,142.45.

Should the Court conclude that the oral agreement was enforceable and the Transfer

unavoidable, the Trustee would nevertheless be entitled to an award of at least $30,000.00.  As

the Trustee explained at Summary Judgment, Michael failed to explain the whereabouts of a

portion of the mortgage proceeds in the amount of $30,000.00.  The testimony at the deposition

Counsel Aff., Exhibit J concerning the missing funds went as follows:

> Q:    And do you have any ... knowledge as to the balance of the
>        $30,000?
> A:    No.
> Q:    And do you know that your mother didn't receive that
>        $30,000?
> A:    I don't believe my mother received anything from either of
>        those mortgages.

Thus, the Trustee argued and maintains on appeal that even were a decision made to enforce the

alleged oral agreement, $30,000.00 should not have been deducted from the Debtor's share of

the proceeds as there was no evidence that said sum was received by the Debtor through the

mother's mortgages.  Thus, the Trustee would still be entitled to recovery of $30,000.00 as

Michael failed to establish that the Debtor received this sum at any point prior to filing

bankruptcy.  In other words, even should the Court conclude that some "value" was received for the Transfer, said "value" would be short $30,000.00.

## VI.    CONCLUSION

Try as he might, Michael cannot have it both ways.  Either the Transfer was a gift, void for want of consideration, or repayment of an antecedent debt and because of the Statute of Frauds, no purported oral agreement can alter the outcome.  The Trustee thus requests an award of all costs pursuant to Bankruptcy Rule 8014, and reserves the right to seek fees and costs under Bankruptcy Rule 8020.

JOSEPH BRAUNSTEIN, CHAPTER 7
TRUSTEE OF THE ESTATE OF DAVID
GEROGE AKILLIAN,

By his Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: July 19, 2011

Steffani Jill Boudreau, Esquire
BBO No. 564967
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
sboudreau@riemerlaw.com

20

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

IN RE:  DAVID GEORGE AKILLIAN,
DEBTOR,

      Debtor

---

MICHAEL HAIG AKILLIAN,

      Appellant,

                        Civil Action No. 1-11-CV-10987-NMG

V.

JOSEPH BRAUNSTEIN, CHAPTER 7
TRUSTEE OF THE ESTATE OF DAVID
GEORGE AKILLIAN,

      Appellee.

## CERTIFICATE OF SERVICE

I, Steffani Jill Boudreau, hereby certify that on July 19, 2011, I served a copy of the

Appellate Brief of Joseph Braunstein, Chapter 7 Trustee, upon the following counsel by

electronic mail as follows:

      Gary W. Cruickshank
      Law Office of Gary W. Cruickshank
      21 Custom House Street, Suite 920
      Boston, Massachusetts  02110

JOSEPH BRAUNSTEIN, CHAPTER 7
TRUSTEE OF THE ESTATE OF DAVID
GEROGE AKILLIAN,

By his Attorneys,
RIEMER & BRAUNSTEIN LLP

Dated: July 19, 2011

Steffani Jill Boudreau, Esquire
BBO No. 564967
Riemer & Braunstein LLP
Three Center Plaza
Boston, Massachusetts 02108
(617) 523-9000
sboudreau@riemerlaw.com

1351129.2