```
                    United States District Court
                      District of Massachusetts
_____
                                   )
MICHAEL HAIG AKILLIAN,             )
         Appellant,                )
                                   )
         v.                        )    Civil Action No.
                                   )    11-10987-NMG
JOSEPH BRAUNSTEIN,                 )
         Appellee.                 )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

Michael Haig Akillian ("Appellant" or "Michael") appeals from an order of the United States Bankruptcy Court for the District of Massachusetts allowing a motion for summary judgment filed by Joseph Braunstein, the Chapter 7 Trustee ("Appellee" or "Trustee") of the estate of the debtor, David George Akillian ("Debtor" or "David").

## I.  Background

Michael and David are brothers.  They were the beneficiaries of a nominee realty trust, known as the Ceil and Red Realty Trust, u/d/t April 8, 1983 ("the Trust").  Celia and George Akillian, the parents of David and Michael, were the trustees of the Trust which owned real property at 1-3 Howe Street, Watertown, Massachusetts ("the Property").

George Akillian died in August, 1991, and Celia died in March, 2006.  Pursuant to its terms, the Trust terminated upon

Celia's death.  David and Michael thereafter filed a complaint in the Land Court and, in July, 2008, obtained a certificate of title to the Property in their names.  Shortly thereafter, they sold the Property for just over $500,000 and received net proceeds of about $331,000.  Had those proceeds been divided equally, each brother would have received $165,500.  Instead, the proceeds were divided so that Michael received about $71,000 more than David.

David had lived with his mother Celia at the Property for several years before she died.  In 2001, Celia obtained an $80,000 loan from Watertown Savings Bank secured by a mortgage on the Property ("the 2001 mortgage").  The proceeds of the loan were in the form of a bank check made payable to David.  In 2004, Celia executed a second mortgage to secure a $150,000 loan from the bank ("the 2004 mortgage"), of which approximately $80,000 was used to pay off the 2001 mortgage.  David received the net proceeds of the 2004 mortgage which he used for various personal purposes.  At the time of the sale of the Property in 2008, approximately $142,000 of the sale proceeds was used to pay off the balance of the mortgages to Watertown Savings Bank before the remainder was divided by the brothers.

Michael testified at a deposition in June, 2010 that he first learned of the two mortgages in a telephone conversation with his mother and brother sometime between 2004 and 2006.  He

testified that, during that conversation, the three family members agreed that the distribution of the mortgage proceeds to David would be treated as a pre-payment of his share of the Property and that, when it came time to sell it, David would make up the difference for what he had received in advance. That alleged oral agreement was not reduced to writing.

## II. **Procedural History**

In July, 2009, David filed for bankruptcy under Chapter 7 in the United States Bankruptcy Court for the District of Massachusetts. In December, 2009, the Trustee filed an adversary proceeding against Michael to avoid the $71,000 transfer from David to Michael as fraudulent, pursuant to 11 U.S.C. §§ 548 and 550 (Count I), and/or as a preferential payment, pursuant to 11 U.S.C. §§ 547 and 550 (Count II).

In August, 2010, the Trustee moved for summary judgment on both counts, and Michael opposed the motion. In April, 2011, the Bankruptcy Court allowed the motion for summary judgment with respect to Count I, concluding that no money was owed to Michael and that any alleged contract with respect to distribution of the proceeds of the sale of the Property was unenforceable under the terms of the Trust and the Statute of Frauds. The court denied the motion with respect to Count II because, in the absence of a debtor-creditor relationship between the brothers, there is no preference claim. The court added in a footnote that, had an

antecedent debt been proven, Michael's receipt of the additional $71,000 would have constituted a preferential transfer.

In May, 2011, Michael appealed to this Court the allowance of summary judgment as to Count I. His supporting brief was filed in June, 2011. The Trustee filed an opposing brief in July, 2011, to which Michael replied.

**III. <u>Analysis</u>**

    **A.   The Bankruptcy Court's Decision**

The Bankruptcy Court determined that Celia, as Trustee, had full authority to transfer to David the mortgage proceeds. However, the court determined that Michael and David took title to the Property after Celia's death as tenants in common and were thus entitled to share equally in the net sale proceeds. The court found that, as a tenant in common, David was under no obligation to compensate his brother with respect to his mother's decision to convey mortgage proceeds to him before the brothers became owners of the Property. The Court concluded that David made a gift of $71,000 to his brother by authorizing the closing attorney to adjust their shares to the sale proceeds.

The Bankruptcy Court noted that there was no evidence of a written, antecedent agreement among David, Michael and Celia concerning any reimbursement to Michael from the mortgage proceeds obtained by David. An oral agreement to that effect would have been unenforceable under the statute of frauds, the

court concluded, because it would have pertained to the sale of an hereditament (the Property) and/or would have contravened the spendthrift provision of the Trust, which provided that

> [n]o beneficiary shall have the power to anticipate, assign, transfer, alienate or in any way pledge or hypothecate his or her respective interest in this Trust, and any attempt so to do shall be of no effect.

Because any verbal agreement to alter the terms of the Trust or to affect the distribution of the proceeds from the sale of the Property would be subject to the statute of frauds, it would not be unenforceable against the Trustee.

### B. Standard of Review

A federal statute vests in the United States District Courts jurisdiction to hear appeals from interlocutory orders and decrees of bankruptcy judges. See 28 U.S.C. § 158. In reviewing an appeal from an order of a bankruptcy court, a district court reviews de novo "[c]onclusions of law and legal significance accorded to facts". In re Chestnut Hill Mortg. Corp., 158 B.R. 547, 549 (D. Mass. 1993). The court must, however, accept the bankruptcy judge's findings of fact unless a review of the record demonstrates that they are "clearly erroneous." Id.

### C. Application

Appellant contends that the Bankruptcy Judge erred in determining that the statute of frauds required the alleged oral agreement between Celia, David and Michael to be in writing when that agreement concerned the disposition of proceeds from the

-5-

sale of the Property rather than the sale itself.

The fourth clause of the Statute of Frauds in Massachusetts provides that any "contract for the sale of lands, tenements or hereditaments or of any interest in or concerning them" must be in writing to be enforceable. M.G.L. c. 259, § 1. The applicability of that clause hinges on a determination of what is, and what is not, an "interest" in lands, tenements or hereditaments. Massachusetts case law makes clear that the clause does not apply to "an agreement to share proceeds from the sale of land". 14 Mass. Prac. § 5.27. The oft-cited case is Reum v. Brazeau, in which the Massachusetts Court of Appeals considered a Statute of Frauds defense to an oral agreement between a divorced couple that, when and if their former home was sold, they would share equally in the proceeds. 1 Mass. App. Ct. 549, 553 (1973). The court concluded that the oral agreement was enforceable because it concerned "merely personalty, that is, the proceeds of any prospective sale of the property," and thus did not qualify as a contract "for the sale of lands, tenements or hereditaments or of any interest concerning them" under M.G.L. c. 259, § 1. Id.; see also Fencer v. Wills, 259 Mass. 546, 549-50 (1927) (holding statute of frauds inapplicable to oral agreement which concerned "the matter of profits and losses arising, or which might arise, from the sale of lands purchased and held under the terms of the agreement"); Greenfield v. Pearlstein, No.

9307, 1995 WL 106051 (Mass. App. Div. Feb. 28, 1995) (holding statute of frauds inapplicable to oral agreement which concerned "profits or losses arising from the use or sale of realty").

Here, as with the agreement in Reum, the alleged oral contract appears to have related primarily to the disposition of proceeds from the sale of the Property rather than to the sale itself. As a practical matter, the nature of the alleged agreement was informal and ad hoc. That is, Celia gave the mortgage proceeds to David, which was her prerogative as Trustee, and then, once Michael learned of the mortgages, the family members agreed to construe the mortgage proceeds in such a way as to ensure that Michael would later be reimbursed his fair share of the inheritance.

Michael first learned about the mortgages during the alleged phone conversation because a discussion of the Property prompted Celia and David to tell him about the mortgages. Michael testified:

> ... but it wasn't like, "Mike, how do you feel about this, if we do it?" at the time of either of the mortgages. So they kind of shared it in the phone conversation and it was in that phone conversation that we said, okay, he's taking his portion of this house early. It's going to come from his share, you know, when and if we sell the house, and they both said absolutely.

The agreement, if proven, was a conditional promise from David and Celia to Michael, with performance due upon sale of the Property, that could reasonably have been expected to induce

forbearance on the part of Michael.  It concerned distribution of proceeds from the prospective sale of the Property, rather than the sale itself, and thus was not subject to the statute of frauds.

The Court therefore concludes that the Bankruptcy Court erred to the extent it allowed summary judgment based upon a determination that any oral agreement between David, Michael and Celia with respect to the proceeds of the sale of the Property was unenforceable because it pertained to the sale of an hereditament.  Furthermore, although the Trustee maintains that Michael has offered no evidence of the oral agreement, this Court disagrees.  Viewing the record in a light most favorable to the non-moving party, as required with respect to a motion for summary judgment, the Court finds that the deposition testimony of Michael and David, together with their conduct at the time of the sale of the Property (dividing the proceeds so that they ended up with equal shares of the mortgage and sales proceeds), is enough to raise a genuine issue of material fact as to whether a binding oral contract existed.

Accordingly, the Court will vacate the entry of summary judgment as to Count I and remand the case to the Bankruptcy Court for further proceedings consistent with this opinion. Further consideration of whether the alleged oral contract was prohibited by the spendthrift provision is also in order, given

that Celia, as Trustee and under the terms of the Trust as paraphrased, was vested with

> absolute and complete authority over the property of the Trust and could pledge, mortgage or loan Trust property at her discretion; lend money at such terms and on such security as she deemed best; and do such other acts which may be allied with or for the best interest of the Trust.

The Court declines to address the issue of whether the transfer of funds from David to Michael constitutes an avoidable preference pursuant to 11 U.S.C. § 547. Upon remand, the Bankruptcy Court may consider that issue, of which it made only cursory mention in its original opinion, when and if it is ultimately necessary.

## ORDER

In accordance with the foregoing, the entry of summary judgment as to Count I is **VACATED** and the matter is **REMANDED** to the Bankruptcy Court for further consideration consistent with the preceding memorandum.

**So ordered.**

                                /s/ Nathaniel M. Gorton
                                Nathaniel M. Gorton
                                United States District Judge

Dated March 30, 2012